## EDMONDSON *et al.* v. FRANCISCO, *Road Sup'r.*

No. 3199.   Opinion Filed February 28, 1914.

(139 Pac. 279.)

1. **INDIANS—Indian Lands—Establishment of Highways—Damages.**
Under section 37 of the Cherokee Allotment Act of July 1, 1902, c. 1375, 32 St. at L. 722, public highways two rods in width, being one rod on each side of the section line, may be established along all section lines without any compensation being paid therefor, and all allottees, purchasers, and others shall take the title to such lands subject to said provision. But if the buildings or other improvements are damaged in consequence of the establishment of such public highways, such damages shall be determined and paid for as in said section provided and authorized.

2. **SAME.** A road overseer is without authority to open up section lines in the Cherokee Nation, on which are located orchards, houses, and other valuable improvements, placed there before allotment, where the necessary result of his act would be to materially damage or destroy such orchards, houses, or other improvements, without the damages thereto having first been determined and paid for.

3. **SAME—Injunction.** Under such circumstances, injunction will properly lie to enjoin a threatened trespass to open up section lines; no steps having been taken to determine the amount of damage about to be done, or to pay therefor.

(Syllabus by Sharp, C.)

*Error from District Court, Delaware County;*
*T. L. Brown, Judge.*

Action by M. S. Edmondson, Florence Edmondson, and Beulah D. Edmondson, against G. B. Francisco, as road supervisor. Judgment for defendant, and plaintiffs bring error. Reversed and remanded.

*J. G. Austin,* for plaintiffs in error.

*Ad V. Coppedge,* for defendant in error.

Opinion by SHARP, C.  On May 16, 1911, plaintiffs brought suit in the district court of Delaware county against defendant as road supervisor, and in their petition charged that they were the owners and in possession of various tracts of land therein described, aggregating about 500 acres, which said lands were situated in sections 25 and 36, township 22 north, range 24 east, and in sections 30 and 31, township 22 north, range 25 east; that prior to allotment of said lands, and before the same were definitely surveyed, they had put out thereon an orchard, and at great expense had built a house and dug a well near the section line between said sections 30 and 31, and that a road one rod on each side of said section line would include said well and take a part of plaintiffs' house; that the establishment of a road between sections 30 and 31 was impractical and all but impossible, except at great expense, and that the establishment and opening of said section line would prove no benefit to the general public, and would work a great hardship to plaintiffs, and very greatly depreciate the value and usefulness of their property; that the establishment of a road between sections 25 and 36 would cause the destruction of the crops planted thereon, and would materially damage and practically destroy, and likewise greatly depreciate, plaintiffs' property, and would also be impractical without the incurring of great expense. The petition further charged that in September, 1908, there was filed in the office of the county clerk of Delaware county a petition asking to have opened up a highway in that vicinity, on practical lines therein named, and that in July, 1910, the plaintiffs herein filed with the board of county commissioners of Delaware county their consent in writing to the establishment of a highway on their lands along lines named therein, waiving

any and all claims for damages on account thereof; that on the 17th day of August thereafter, said petition coming on to be heard, it was found by the board of commissioners that the petition was legal, that the proposed road was a public necessity, and that the same could be made without unreasonable expense, and it was ordered that the county surveyor make a plat of said road and report to the board; that in September following, the surveyor reported in writing his survey of the premises. It is further charged that, relying upon the acts of said officers, plaintiffs did not fence said section lines for travel, but had continued to occupy the same and to plant crops thereon, but had opened up for travel said newly established road, and that the same had been accepted by the county commissioners, and was then a public highway; that defendant, claiming to act in his official capacity as a road supervisor of the district in which said lands were situated, had caused notice to be served upon plaintiffs, and had threatened to open up said section lines on or after the 28th of May following the service of notice, if the same were not opened up by plaintiffs. At another place in the petition it is charged that the county commissioners had not vacated the section lines, but had expressed their desire to do so. Other allegations of the petition leave somewhat in doubt the true state of facts, but these allegations are not material to the real issue. Just what authority the road supervisor had, in view of the seemingly amicable settlement between the owners of the land and the board of county commissioners, it is not easy to determine. From the petition it seems that the only obstacle in the proceedings arose out of the fact of an existing doubt as to the authority of the county commissioners to vacate the section lines between certain points, which we assume was the inducement offered by the owners for giving, free of charge, a highway across their individual lands on practical lines. But a proper determination of the issues presented by the demurrer to the petition confines the question to be determined to much narrower grounds than that argued by counsel in their briefs. Plaintiffs asked and obtained a temporary injunction restraining the defendant from opening up a portion of the section lines

between sections 25 and 36, and 30 and 31, and the range line between ranges 24 and 25. From the subsequent order sustaining a demurrer to plaintiffs' petition, and in dissolving said injunction, this appeal has been prosecuted.

The Cherokee Allotment Act of July 1, 1902 (32 St. at L. 716) sec. 37, provides as follows:

"Public highways or roads two rods in width, being one rod on each side of the section line, may be established along all section lines without any compensation being paid therefor, and all allottees, purchasers, and others shall take the title to such lands subject to this provision; and public highways or roads may be established elsewhere whenever necessary for the public good, the actual value of the land taken elsewhere than along section lines to be determined under the direction of the Secretary of the Interior while the tribal government continues and to be paid by the Cherokee Nation during that time; and if buildings or other improvements are damaged in consequence of the establishment of such public highways or roads, whether along section lines or elsewhere, such damages, during the continuance of the tribal government, shall be determined and paid for in the same manner."

It will be noted that if buildings or other improvements are damaged in consequence of the establishment of public highways or roads, whether along section lines or elsewhere, the determination and payment of the damages are provided for by the express terms of the act.

As has been seen, plaintiffs were the owners, both of buildings and other improvements on the section lines threatened to be opened up by said defendant. It does not appear that any steps had been taken toward condemning said improvements, or that any compensation therefor had been paid. Irrespective of the cause that prompted defendant to threaten to open the road on the section lines, and without giving consideration to the action of the commissioners in the movement had to locate and establish a public highway elsewhere than on the section lines, it is obvious that the action threatened was without warrant or authority of law. While section 37 of the act of July 1, 1902, provides that public highways or roads two rods in width, being one rod on each side of the section line, may be

established along all section lines without compensation being paid therefor, it further expressly provides for compensation for all buildings or other improvements damaged in the location of said roads. By our Organic Act (section 24, art. 2, Constitution) it is provided that private property shall not be taken or damaged for public use without just compensation. Such was the act threatened by defendant.

In *Good et al. v. Keel et al.,* 29 Okla. 325, 116 Pac. 777, the effect of the act of Congress of April 26, 1906 (34 St. at L. 145, sec. 24, c. 1876), pertaining to highways in the Choctaw, Chickasaw, and Seminole Nations, and its effect upon the owners of allotments made prior to its passage, was under consideration, and it was there held that the act did not authorize the highway officials of the state to take and condemn without compensation a strip one rod on each side of the section lines. The order of the trial court perpetually enjoining the road officer "from opening up said road without first having condemned the property of the plaintiffs and paid therefor" was sustained by this court, which held that the trial court was correct in holding that the allottees were entitled to compensation.

In the instant case, as to the house and other improvements, the provisions of section 37, *supra,* are similar to those of section 24 of the act of April 26, 1906, and must be given the same construction as was given by this court in the above cases. Under the terms of the allotment act, the matter of fixing compensation for buildings or improvements was vested in the Secretary of the Interior during the continuance of the tribal government, while by statute the power to condemn lands for highways is given to any county, city, township, or school district. Section 3330, Comp. Laws 1909 (Rev. Laws 1910, sec. 3188). It is unnecessary to determine in which the power is now vested, or what the procedure may be for opening up section lines on which there are situated houses, wells, or orchards, for it does not appear that any effort by any one in authority was made to compensate plaintiffs for the value of their property.

In what we have said, we do not wish to be understood as questioning the right of the public to have opened up public

highways on section lines, or elsewhere, when authorized by law, whenever necessary for the public good, but where there is situated, on such highways, houses and improvements of the character heretofore named, the right of the owner thereof to be paid a just compensation, after the manner required by law, is not open to question. The petition charges that these improvements were erected on the premises before the same were definitely surveyed, and prior to allotment. Section 2, art. 17, Williams' Ann. Const. Okla., provides that the state of Oklahoma accepts all reservations and lands for public highways, made under any grant, agreement, treaty, or act of Congress, with the express provision, however, that said section shall not be construed to prejudice the vested rights of any tribe, allottee, or other person to such land. The ownership, therefore, of the plaintiffs in and to their buildings and other improvements on said lands was vouchsafed them by our organic law.

From what has been said, it is clear that the defendant, acting as an officer of his township, was without authority of law to proceed in the manner threatened. Nor is this opinion in conflict with the decision of this court in *Mills v. Glasscock,* 26 Okla. 123, 110 Pac. 377, the facts being unlike.

The judgment of the trial court should therefore be reversed, and the cause remanded, with instructions to overrule the demurrer, vacate the order discharging the temporary injunction, and to proceed further in accordance with this opinion.

By the Court: It is so ordered.